IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TERRY L. DEVRIES,

      Plaintiff,                                 No. 2:12-cv-0859-KJN

    v.

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.                              <u>ORDER</u>

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from April 24, 2009, through the date of the final administrative decision.  (ECF No. 13.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 15.)

////

---

[1] This case was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties have voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 6, 9.)

1

For the reasons that follow, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I. BACKGROUND

Plaintiff was born on September 8, 1958, has a twelfth grade education, and previously worked as a truck driver, warehouse worker, heavy construction worker, lawn care worker, and home health aid/caregiver.[2] (Administrative Transcript ("AT") 29-35, 48-49, 53-54, 118, 123.) Around July 21, 2009, plaintiff applied for DIB and SSI, alleging that he was unable to work as of April 24, 2009, primarily due to back pain resulting from degenerative disc disease and spinal stenosis, lupus, left foot problems, and deep vein thrombosis in his left leg. (AT 10, 38, 48-49, 53-54, 123, 167, 191.)[3] On October 21, 2009, the Commissioner determined that plaintiff was not disabled. (AT 10, 55-59.) Upon plaintiff's request for reconsideration, the determination was affirmed on December 31, 2009. (AT 10, 65-70.) Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on July 20, 2010, and at which plaintiff (represented by counsel) and a vocational expert ("VE") testified. (AT 10, 25-47.)

In a decision dated August 17, 2010, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from April 24, 2009, through the date of that decision. (AT 10-18.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on February 3, 2012. (AT 1-6.)

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Although plaintiff's application for DIB alleged a disability onset date of April 24, 2009, plaintiff's application for SSI indicated that his disability began on March 20, 1997. (AT 118, 123.) However, all parties treated April 24, 2009, as plaintiff's alleged disability onset date during the underlying administrative proceedings, and plaintiff's briefing in this court does not contend otherwise. (AT 10-18, 45, 234-37.)

Thereafter, plaintiff filed this action in federal district court on April 4, 2012, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.     ISSUES PRESENTED

Plaintiff has raised the following issues: (1) whether the ALJ improperly discounted the opinion of plaintiff's treating physician; and (2) whether the ALJ improperly discounted plaintiff's testimony regarding his symptoms and functional limitations.

III.    LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.     DISCUSSION

A.      Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[4]  As an initial matter, the ALJ found

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."   42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).

3

that plaintiff remained insured for purposes of DIB through December 31, 2013. (AT 12.) At the first step, the ALJ concluded that plaintiff had engaged in substantial gainful activity between April 24, 2009, plaintiff's alleged disability onset date, and November 2009, but not since November 2009. (Id.)[5] At step two, the ALJ determined that plaintiff had the following severe impairments: chronic low back pain status post back surgery in 1982 and obesity. (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or

---

A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

[5] At the start of the administrative hearing, plaintiff's counsel at the administrative level noted that plaintiff had worked as a home health aide for his live-in girlfriend between approximately April and November 2009, that his earnings during that period had been above the substantial gainful activity level, and that this issue should be addressed. (AT 28.) Although plaintiff now argues in his briefing before this court that the ALJ never resolved the issue at the hearing, the ALJ in fact asked plaintiff's administrative counsel later in the hearing whether plaintiff was still alleging an onset date in April, which plaintiff's administrative counsel confirmed. (AT 45.) In his subsequent brief to the Appeals Council, plaintiff's administrative counsel requested an amended onset date of November 2009, characterizing plaintiff's work from April to November 2009 as an unsuccessful work attempt. (AT 112.)

4

combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 13.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) (i.e., lift and carry 20 pounds occasionally and 10 pounds frequently, sit for about 6 hours out of an 8-hour day and stand and/or walk for about 6 hours out of an 8-hour day) with the following additional limitations: the claimant can occasionally climb, balance, stoop, kneel, crouch and crawl.

(AT 13.)

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (AT 16.) However, at step five the ALJ determined that, in light of plaintiff's age (an individual closely approaching advanced age), education (high school education with ability to communicate in English), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (AT 17.) Based on the vocational expert's testimony, the ALJ found that plaintiff could perform the following representative light occupations with a specific vocational profile ("SVP") of 2: (1) parking lot attendant, with 12,133 jobs in California and 73,102 jobs nationally; (2) outside deliverer with 7,717 jobs in California and 51,042 jobs nationally; and (3) lab sample carrier with 9,640 jobs in California and 90,040 jobs nationally. (Id.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from April 24, 2009, through the date of the ALJ's decision. (AT 18.)

B.  Plaintiff's Substantive Challenges to the Commissioner's Determinations

1.  Whether the ALJ improperly discounted the opinion of plaintiff's treating physician

In this case, it is essentially undisputed that plaintiff suffers from chronic lower

back pain attributable to degenerative disc disease. The primary issue is the extent of plaintiff's back pain and the degree of functional limitation resulting from his back condition. In this regard, plaintiff contends that the ALJ improperly discounted the opinion of his treating physician, Dr. Duane Worley.[6]

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported

---

[6] The ALJ found that there was minimal clinical evidence to corroborate or support any finding of significant vocational impact related to plaintiff's other diagnosed and/or alleged conditions, including lupus, deep vein thrombosis, and left foot problems, concluding that they were not severe. (AT 13-15.) Plaintiff does not challenge these findings before this court. Indeed, Dr. Worley indicated in a July 16, 2010 treatment note that a rheumatology consultant had opined that lupus was not involved with respect to plaintiff's skin rash, and Dr. Worley further stated that plaintiff had suffered from left foot pain since an injury that occurred years ago. (AT 387-88.) Plaintiff himself during an ER visit dismissed any significant symptoms or functional limitations related to his deep vein thrombosis condition, refusing to wait for treatment authorization and noting that the condition was not bothering him, although the ER provider warned him that the condition could be life-threatening if not treated. (AT 367.) Moreover, even recognizing the fact that plaintiff at times did not have insurance coverage to obtain further testing and treatment for some of these conditions, chronic lower back pain and degenerative disc disease were the only diagnoses listed on Dr. Worley's RFC assessment, and no limitations related to the other alleged conditions were assessed. (AT 278-79, 284, 310-11, 334-37.)

examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[7] except that the ALJ in any event need not give it any weight if it is conclusory and supported by no more than minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

On August 3, 2009, plaintiff's treating physician, Dr. Duane Worley, wrote a letter indicating that plaintiff had been his patient for the past four years, had experienced considerable health issues and a significant decline in physical function, but had persevered and continued to work despite Dr. Worley's suggestion to take time off to recuperate. (AT 284.) Dr. Worley stated that plaintiff had acute and severe lumbar stenosis with disabling back pain and radicular symptoms. (Id.) He indicated that he had advised plaintiff that any further heavy labor would contribute to almost certain incapacitation. (Id.) Dr. Worley also stated that plaintiff was not a malingerer and noted his support for plaintiff's disability application. (Id.)

On May 24, 2010, Dr. Worley completed a Physical Residual Functional Capacity Questionnaire. (AT 334-37.) In this questionnaire, Dr. Worley indicated that his frequency and length of contact with plaintiff was one year. (AT 334.) He diagnosed plaintiff with chronic lower back pain attributable to degenerative disc disease and status post a herniated lumbar disc surgery in 1982, and stated that plaintiff's prognosis was poor. (Id.) Dr. Worley noted that plaintiff experienced constant pain, which was exacerbated with any movement; plaintiff had

---

[7] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527.

lumbar spine and muscle tenderness; and Dr. Worley checked boxes corresponding to the following signs in support of his diagnosis: reduced range of motion in the total spine, joint instability, sensory changes, reflex changes, impaired sleep, weight change, abnormal posture, tenderness, muscle spasm, and abnormal gait. (Id.) Plaintiff had to limit his movement and could not stay in any one position, sitting or standing, for any length of time. (AT 337.) According to Dr. Worley, plaintiff was not a malingerer, emotional factors such as depression and anxiety contributed to his physical condition, plaintiff's pain was constantly severe enough to interfere with attention and concentration needed to perform even simple work tasks, plaintiff experienced all the side effects listed on the form (e.g. dizziness, drowsiness, stomach upset, etc.), but plaintiff was capable of low stress jobs. (AT 334-35.)

      Dr. Worley opined that plaintiff could walk for 3 blocks without rest or severe pain; could sit for 15-20 minutes at a time; could stand for 30-45 minutes at a time; could sit/stand/walk for less than 2 hours total in an 8-hour working day; had to walk around every 20-30 minutes for approximately 5-10 minutes at a time; required the option to shift between sitting, standing, and walking at will; needed to take unscheduled breaks lying down or sitting quietly every 30 minutes for approximately 10-15 minutes at a time; could only lift less than 10 pounds; could rarely twist and never stoop/bend, crouch/squat, climb ladders, or climb stairs; could only use his arms for reaching 70% during an 8-hour working day; and would likely be absent from work for more than four days per month. (AT 335-37.) Dr. Worley further stated that plaintiff's impairments lasted or could be expected to last at least twelve months. (AT 335.)

      In discounting Dr. Worley's opinion, the ALJ primarily found that the opinion was inconsistent with the medical evidence of record. (AT 14, 16.) Indeed, Dr. Worley's severe limitations are not supported by the results of the objective radiology testing that was performed. A July 13, 2009 lumbar spine MRI confirmed that prior surgery had been performed at the L4-5 and L5-S1 levels (consistent with plaintiff's 1982 back surgery), but otherwise revealed only mild to moderate central canal stenosis and mild bilateral neural foraminal narrowing at the L4-5

level, and mild right neural foraminal narrowing at the L5-S1 level.  (AT 14, 272.)  A subsequent March 11, 2010 x-ray of the lumbar spine additionally showed only slight loss of height of L1, L4 and L5 vertebral bodies with marginal spurring noted at multiple levels.  (AT 14, 384-85.)  The ER provider who reviewed the x-ray found it to be essentially unremarkable with normal lumbar spine alignment.  (AT 366.)  Thus, as the ALJ reasonably observed, these mild to moderate objective findings are inconsistent with Dr. Worley's characterization of plaintiff's back problem in August 2009 as "acute and severe lumbar stenosis with disabling back pain."  (AT 14, 284.)

        Furthermore, although Dr. Worley's questionnaire assessed detailed restrictions and functional limitations, it included little analysis of the objective test results, medical evidence, and clinical findings pertaining to plaintiff's back condition to support such extreme limitations.  (AT 334-37.)  The few "objective signs," as summarized above, were all of the "check-the-box" variety, without any meaningful explanation or specifics.  (AT 334.)  Curiously, plaintiff's first documented complaint of back pain during the relevant period was on July 8, 2009, when plaintiff claimed he could not even adequately strain to have a bowel movement due to the intense pain.  (AT 275-76.)  At that time, the nurse practitioner ordered an MRI, but also, without apparently awaiting any MRI results, made a reference to "Disability paperwork – Last day of work April 24, 2009."  (AT 276.)  Notably, even though Dr. Worley's and his staff's treatment notes document plaintiff's subjective complaints, the treatment notes contain only minimal objective and clinical findings.  See Meanel, 172 F.3d at 1114 (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  For example, although the nurse practitioner recorded a positive left straight leg test on July 8, 2009, there was no indication as to the severity of the test result (i.e., the angle at which the test was positive); nor were any specific details or measurements concerning plaintiff's ostensibly limited range of motion noted.  (AT 276.)  Especially in light of the relatively benign findings of the objective diagnostic studies, Dr. Worley was required to provide much more in terms of clinical

findings and reasoning to support his severe opinion.

Moreover, as the ALJ noted, in October 2009, plaintiff's treating nurse practitioner, working in conjunction with Dr. Worley, issued plaintiff a note authorizing plaintiff to return to work as of October 5, 2009, upon plaintiff's request. (AT 15, 288.) Although this authorization appears to have been done somewhat reluctantly, it nonetheless undercuts Dr. Worley's opinion regarding disabling limitations, because a reasonable medical provider presumably would not authorize the issuance of a return-to-work note to a truly disabled patient, even if the patient requested it.

In light of the above, the court finds that the ALJ gave specific and legitimate reasons for discounting Dr. Worley's opinion.[8] Plaintiff's further argument that the ALJ impermissibly relied on the opinion of a non-examining state agency physician to formulate plaintiff's RFC is also unpersuasive under the facts and circumstances of this case.

On October 12, 2009, state agency physician Dr. Gilpeer reviewed plaintiff's medical records and opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; and only occasionally climb, balance, stoop, kneel, crouch, or crawl. (AT 290-95.) This assessment was affirmed by state agency physician Dr. Crowhurst on December 31, 2009. (AT 326-28.) As the Ninth Circuit has explained, although the opinion of a non-examining physician cannot by itself constitute substantial evidence, it may serve as substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." Thomas v. Barnhart, 278 F.3d

---

[8] The ALJ also found Dr. Worley's opinion to be internally inconsistent, because he essentially opined that plaintiff was not even capable of sedentary work, yet found that plaintiff was capable of a low stress job. (AT 16.) The court gives little weight to this reason for rejecting Dr. Worley's opinion, because a claimant may psychologically be capable of low stress work, but physically be incapable of even sedentary work. Nevertheless, because the ALJ provided several other specific and legitimate reasons for discounting Dr. Worley's opinion, any error was harmless. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error analysis applicable in judicial review of social security cases).

947, 957 (9th Cir. 2002). In this case, as the ALJ noted, the opinions of the state agency physicians, which still imposed significant limitations based on an undisputed back impairment, are much more consistent with the other substantial evidence of record, especially the mild to moderate results from the objective radiological studies. As such, the ALJ properly relied on these opinions to support the RFC assessment.[9]

Therefore, the court finds that the ALJ gave specific and legitimate reasons for rejecting the opinion of plaintiff's treating physician, and that the ALJ's evaluation of the medical opinions was supported by substantial evidence.

### 2. Whether the ALJ improperly discounted plaintiff's testimony regarding his symptoms and functional limitations.

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time,

---

[9] Plaintiff's argument that Dr. Worley's May 24, 2010 opinion should be controlling, because it is more recent than Dr. Gilpeer's October 12, 2009 opinion is devoid of merit. Plaintiff has not presented any substantial evidence indicating that plaintiff's condition had significantly deteriorated or worsened during the relevant period – to the contrary, the July 13, 2009 lumbar spine MRI and the March 11, 2010 lumbar spine X-ray both showed similar mild to moderate findings, as discussed above.

the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of back pain and associated limitations. Indeed, the ALJ limited plaintiff to light work with several postural limitations. (AT 13.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding his symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

The ALJ observed that the medical evidence did not support plaintiff's claims of disabling limitations to the degree alleged. (AT 14.) For the reasons discussed above, that finding was supported by substantial evidence. To be sure, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). But even though lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for

12

the ALJ to consider. Burch, 400 F.3d at 681.

Moreover, the ALJ here also provided other reasons for discounting plaintiff's credibility. The ALJ pointed to several inconsistencies between plaintiff's statements and the record evidence. (AT 15.) For example, the ALJ noted that although plaintiff testified that he stopped working as a truck driver in April 2009 upon the recommendation of Dr. Worley, a July 8, 2009 treatment note reflects that plaintiff took a personal leave from work on April 24, 2009 to help his girlfriend recover from bunion surgery and because he had strained his back. (AT 15, 36-37, 275.) Indeed, as noted above, plaintiff's first complaint of back pain during the relevant period was only documented on July 8, 2009. (AT 275.) The ALJ also observed that plaintiff had been inconsistent in describing his daily activities. (AT 15.) At the administrative hearing, plaintiff testified that he was a home health aid/caregiver for his girlfriend through November 2009, which according to plaintiff involved vacuuming, light cooking, mopping, sweeping, taking her to the grocery store and to appointments, and generally assisting her around the house, and for which plaintiff was compensated by the state. (AT 29-33, 37-38.) However, in plaintiff's exertional activities questionnaire, executed in August 2009 and while still receiving compensation from the state as a caregiver for his girlfriend, plaintiff reported that he could do no chores because of his disabilities and that his girlfriend did all of them. (AT 16, 208-09.) An ALJ is permitted to draw an adverse inference concerning symptoms credibility from the claimant's general lack of candor. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). Additionally, the ALJ found that plaintiff's allegation of disability in November 2009, when he stopped the caregiver work, was inconsistent with his request and approved letter to return to work just the previous month. (AT 15.)

Finally, the ALJ also reasoned that plaintiff sometimes failed to follow up on recommendations made by his treating providers, which suggested that plaintiff's symptoms may not have been as serious as he alleged. (AT 15.) For example, on March 11, 2010, plaintiff left the ER against medical advice, because he thought it was taking too long to get coverage for his

deep vein thrombosis treatment approved. (AT 366-67.) Although plaintiff's brief argues that plaintiff was frustrated and that the physician refused to prescribe him medication for his back pain, the treatment notes from that incident indicate that the doctor could not prescribe him back pain medication, because he was not being properly discharged. (AT 367.) The ER physician did offer plaintiff back pain medication on site, but plaintiff apparently refused. (Id.) Failure to seek consistent treatment is a proper consideration when evaluating credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment... Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." Molina, 674 F.3d at 1113-14 (citation and quotation marks omitted).[10]

In sum, the court finds that the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's credibility as to his symptoms and functional limitations. Plaintiff's briefing before this court offers certain alternative views of the evidence; for example, plaintiff argues that his request to return to work in October 2009 is subject to a more favorable interpretation, i.e., that he essentially made a well-intentioned, but ultimately impracticable request to return to work. Although the evidence may also be susceptible to other interpretations, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment

---

[10] The court recognizes that plaintiff experienced insurance coverage issues and financial difficulties, and that plaintiff has received assistance through a Sutter charity program to help finance treatment. Of course, failure to obtain treatment due to lack of insurance or funding cannot support an adverse credibility finding. Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007); see also SSR 96-7p, at ** 7-8. However, in the incident referenced by the ALJ's decision, the ER physician was apparently making significant efforts to get plaintiff coverage through the pharmaceutical company, but plaintiff thought the process took too long and left against medical advice. (AT 366-67.) From these facts, the ALJ could reasonably infer that plaintiff's symptoms were not as serious as he alleged, because otherwise he would have likely pursued every feasible treatment opportunity, including proper treatment for his deep vein thrombosis condition and a prescription for back pain medication.

to be reasonable and supported by substantial evidence.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one").  As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible.  But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ...Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

V.     CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is GRANTED.

3. Judgment is entered for the Commissioner.

4. The Clerk of Court is directed to close this case and vacate all dates.

IT IS SO ORDERED.

DATED: June 18, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE